**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Cara Simone,<br><br>  Plaintiff,<br><br>v.<br><br>M & M Fitness LLC,<br><br>  Defendant. | No. CV-16-01229-PHX-JJT<br><br>**ORDER** |

At issue is Defendant M & M Fitness LLC d/b/a Knockout Fitness's Motion for Summary Judgment (Doc. 32, Mot.), to which Plaintiff Cara Simone filed a Response (Doc. 36, Resp.), and in support of which Defendant filed a Reply (Doc. 40, Reply). The Court finds these matters appropriate for decision without oral argument. *See* LRCiv 7.2(f).

**I.  BACKGROUND**

On June 23, 2015, Plaintiff joined Defendant's gym by executing an Agreement allowing automatic payments to be debited from her account. In pertinent part, that Agreement stated:

> I also agree to contact Knockout Fitness – Gilbert about any matter of cancellation or stop payment that may pertain to this agreement in order to attempt to resolve the matter prior to taking any negative action such as stopping payment or charging back. If any negative action is taken and the action is ruled in favor of Knockout Fitness – Gilbert and the cardholder/bank account owner did not contact Knockout Fitness – Gilbert prior to the negative action, the cardholder/account owner will be legally liable for all items and fees as noted above.

(Doc. 33, Plaintiff's Statement of Facts ("PSOF") Ex. A.)

On November 5, 2015, Plaintiff emailed Defendant stating that she was cancelling her membership, effective immediately, and instructed that Defendant not transfer any further payments from her account. In response, Defendant's General Manager explained that Plaintiff had two cancellation options: (1) travel to the gym to fill out a cancellation form in person; or (2) send a letter via certified mail requesting cancellation. Defendant requested that Plaintiff accomplish one or the other as soon as possible to avoid continued membership. Plaintiff objected to the options presented and Defendant cancelled her membership on November 9, 2015. On April 26, 2016, Plaintiff filed her Complaint against Defendant alleging that the Agreement violated 15 U.S.C. § 1693l. (Doc. 1.)

## II. LEGAL STANDARDS

### A. Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288–89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. The non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a question of material fact. *Anderson*, 477 U.S. at 256–57 (holding that the plaintiff must present affirmative

evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

### B. The Electronic Fund Transfer Act

The Electronic Fund Transfer Act ("EFTA") was enacted in 1978 as part of the Consumer Credit Protection Act to protect individual consumer rights by providing a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems. *See* 15 U.S.C. §§ 1601 *et seq.*; *Bultemeyer v. Fitness All., LLC*, No. CV-12-2619-PHX-LOA, 2014 WL 667585, at *3 (D. Ariz. Feb. 20, 2014). The EFTA is a remedial statute accorded "a broad, liberal construction in favor of the consumer." *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 163 F.3d 948, 950 (6th Cir. 1998). The statute controls a wide range of electronic money transfers and subjects them to a host of procedural requirements designed to protect consumers. The "primary objective of [the EFTA] . . . is the provision of individual consumer rights." 15 U.S.C. § 1693(b). Civil liability for an EFTA violation arises when any person or legal entity fails to comply with the statute with respect to any consumer. 15 U.S.C. § 1693m. The EFTA is a strict liability statute. *Burns v. First Am. Bank*, No. 04C7682, 2006 WL 3754820, at *6 (N.D. Ill. Dec. 19, 2006).

Under the EFTA, consumers have the right to "stop payment of a preauthorized electronic fund transfer by notifying the financial institution orally or in writing at any time up to three business days preceding the scheduled date of such transfer." 15 U.S.C. § 1693e(a). To preserve this right, the EFTA provides an anti-waiver provision stating:

> No writing or other agreement between a consumer and any other person may contain any provision which constitutes a

> waiver of any right conferred or cause of action created by this subchapter. Nothing in this section prohibits, however, any writing or other agreement which grants to a consumer a more extensive right or remedy or greater protection than contained in this subchapter or a waiver given in settlement of a dispute or action.

15 U.S.C. § 1693l.

The statute prohibits agreements that preclude consumers from exercising rights conferred under EFTA and the "use of such an agreement by any party is an actionable violation." *Jordan v. Freedom Nat'l Ins. Servs. Inc.*, No. CV-16-00362-PHX-DLR, 2016 WL 5363752, at *2 (D. Ariz. Sept. 26, 2016) (citing 15 U.S.C. § 1693m(a)).

## III. ANALYSIS

Defendant moves for summary judgment on three grounds: (1) that the Member Agreement does not constitute a waiver under the EFTA, either on its face or in practice; (2) any EFTA violation committed was unintentional and a *bona fide* error; and (3) § 1693l serves only to void agreements featuring a waiver, not to create statutory liability. (Mot. at 1.)

### A. Violation of the EFTA

Defendant first moves for summary judgment on the grounds that the Member Agreement does not violate the EFTA. (Mot. at 3-7.) Specifically, Defendant contends that the language of the Member Agreement does not constitute a waiver of Plaintiff's right to stop payment, either facially (Mot. at 3-5) or as-applied (Mot. at 5-7).

#### 1. Member Agreement's Language

Defendant argues that the Agreement "specifically contemplates that Plaintiff may cancel or stop payments at any time" and only deals with Plaintiff's notification to Defendant, not her ability to stop an electronic transfer. (Mot at 3.) Plaintiff responds that, by exposing her to a potential breach of contract action were she to exercise her rights under the EFTA, but in contravention of the Agreement, the Agreement constitutes a waiver of her EFTA rights. (Resp. at 5-10.)

As stated, under the EFTA, consumers may stop payment of preauthorized electronic fund transfers "by notifying the financial institution orally or in writing at any time up to three business days preceding the scheduled date of such transfer." 15 U.S.C. § 1693e(a). Under the terms of the Member Agreement, however, a patron is required to contact Defendant and attempt to resolve the matter before stopping any payment. While the Member Agreement does not explicitly preclude Plaintiff from stopping payment (Reply at 4), it inherently does so, hindering consumers' ability to exercise their rights as Congress intended. The EFTA's language precludes such hindrance—no matter how slight—and does not expressly require a showing of specific harm. Whether the contract requires only advance notice, as Defendant argues, or an "intimidating final confrontation between the consumer," as Plaintiff argues, is of no moment. (Mot. at 5; Resp. at 7, 9.) Either creates an additional hurdle not contemplated by the EFTA, which does not require that a consumer provide notice to a payee before stopping payment. *See* 12 C.F.R. § 1005.10(c). As Plaintiff notes, if she were to stop payment without notifying Defendant—as is her right under the EFTA—she would be susceptible to a breach of contract lawsuit brought by Defendant which could expose her to liquidated damages, as well as attorneys' fees and costs. (Mot. at 8 (citing *W. Pinal Family Health Ctr., Inc. v. McBryde*, 785 P.2d 66, 68 (Ariz. Ct. App. 1989); A.R.S. §§ 12-341, 12-341.01).)

Defendant's argument that the Member Agreement does not preclude Plaintiff from stopping payment is true, so far as it goes—hence the Court's prior skepticism regarding whether the language functions as a waiver. (Mot. at 3 (citing Docs. 19, 25).) The language in the Agreement does not preclude Plaintiff from doing so because it cannot—the EFTA confers consumers with an absolute right to stop payment under its terms and no agreement can impinge on that entitlement. However, Defendant's Agreement precludes Plaintiff from exercising her right freely and without legal exposure—the very circumstance contemplated by the EFTA's anti-waiver provision. And although no penalties have thus far been assessed and no legal action taken, if the penalty is only that associated with the balance on client's account at cancellation, the

pertinent language of the Agreement is wholly superfluous. Moreover, while Plaintiff's cited precedent is not controlling and features arguably more onerous language than the Agreement at issue, its logic still persuades, and the Court has not been presented with on-point, contrary authority—controlling or otherwise. *See Baldukas v. B & R Check Holders, Inc.*, No. 12-CV-01330-CMA-BNB, 2012 WL 7681733, at *5 (D. Colo. Oct. 1, 2012) ("[t]he plaintiff would breach the [agreement] if she attempted to stop payment of the preauthorized loan payments other than in writing and ten days in advance, whether or not her financial institution honored the notice . . . [causing] the plaintiff to waive her rights to the stop payment provisions of the EFTA").

### 2. Defendant's Business Practices

Defendant also argues that even if the Member Agreement's language constitutes a waiver on its face, in practice there are no additional penalties or harms assessed if a party fails to notify Defendant of his or her intent to stop payment as prescribed. (Mot. At 6.) In support, Defendant offers that: (1) it has never been involved in any litigation regarding customer payment or non-payment and no practice exists of assessing penalties or fees if a negative action is ruled in its favor; and (2) no internal fees or assessments have ever been levied in response to a stop-payment without prior notification. (Mot. at 2, 6-7 (citing Doc. 37, Defendant's Statement of Facts ("DSOF") ¶¶ 4-7).)

Defendant's argument is well taken. It has put forth uncontroverted evidence that it has not included additional fees for violating its Member Agreements, including the notification at issue; neither has it ever pursued litigation against any customer regarding non-payment, stop-payment, or cancellation whatsoever. (DSOF ¶¶ 4-5, 7.) And Plaintiff has not put forth any evidence showing she was assessed fees or penalties in failing to notify Defendant, or even that she attempted to exercise any rights under the EFTA, or that such negative consequences were threatened in response to her membership cancellation attempts. Instead, Defendant only attempts to recoup any membership fees due and owing under the Agreement at the time of cancellation. Nonetheless, Plaintiff is correct that Defendant's election not to assert its contractual rights do not extinguish

those rights. (Resp. at 10.) The Member Agreement explicitly grants Defendant that right—the very thing proscribed under the EFTA, which does not regulate practice, but content—and nothing precludes Defendant from changing course and asserting those rights in the future. *See* 15 U.S.C. § 1693l.

Thus, despite Defendant's uncontroverted evidence of non-enforcement, both as to Plaintiff and as to its customers generally, such practices do not alter the terms of the Agreement, the language of which violates the anti-waiver section of the EFTA. The Court cannot grant Defendant summary judgment based on either the language or the enforcement of the Agreement.

### B. *Bona Fide* Error Defense

Defendant next argues that any violation of the EFTA was a *bona fide* error under 15 U.S.C. § 1693m(c). (Mot. at 7.) To be entitled to a *bona fide* error defense, a party must prove that the error in question is: (1) unintentional; (2) the product of a *bona fide* error; and (3) must have occurred notwithstanding the maintenance of procedures reasonably adapted to avoid the error in question. *See* 15 U.S.C. § 1693m(c); *Singer v. EIntelligence, Inc.*, 55 F. Supp. 3d 1043, 1051 (N.D. Ill. 2014). Defendant puts forth uncontested facts showing that it chose to utilize a boilerplate contract template from a third-party, ClubReady, for its Membership Agreement and thus relied on a "professional company with extensive experience" to ensure legal and regulatory compliance. (Mot. At 8 (citing DSOF ¶¶ 4, 8).) Defendant argues that when viewed in conjunction with its business practices, such reliance illustrates that any violation was errant and unintentional. (Mot. at 8.) Moreover, Defendant contends that ClubReady's ancillary policy on past due communications, which states that the goal is to avoid collections and acknowledges that the customer may disable the billing account at any time, evidences that any waiver was not intentional. (Mot. at 8; DSOF ¶ 4.) Plaintiff responds that Defendant's error was a mistake of law, which is precluded under the *bona fide* error doctrine, and that Defendant has failed to show it maintained the adequate procedures to avoid the error. (Resp. at 11.)

There seems little doubt, based on the unconverted evidence put forth by Defendant, that the waiver required in signing the Membership Agreement was unintentional, at least in terms of violating the EFTA. Moreover, any intent can likely be ascribed to ClubReady, rather than Defendant. Nonetheless, a mistake of law is not subject to the *bona fide* error defense in such circumstances. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, LPA*, 559 U.S. 573 (2010). And the Ninth Circuit has denied similar attempts to raise a *bona fide* error defense under consumer protection statutes. *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 779 (9th Cir. 1982) ("Appellant only presented evidence that, at best, might show it had been mistaken about the law. This is insufficient by itself to support the *bona fide* error defense pursuant to 15 U.S.C. § 1692k(c)."). While Defendant argues that it employed ClubReady's template in order to "avoid any unintentional legal errors in their member agreements" (Mot. at 8), even though ClubReady is not legal counsel, Defendant cannot stand on that reliance to assert a *bona fide* error defense. *See Baker*, 677 F.2d at 779 ("Reliance on advice of counsel or a mistake about the law is insufficient by itself to raise the *bona fide* error defense. '[Section] 1692k(c) does not immunize mistakes of law, even if properly proven.'") (quoting *Rutyna v. Collection Accounts Terminal, Inc.*, 478 F. Supp. 980, 982 (N.D. Ill. 1979)); *Picht v. John R. Hawks, Ltd.*, 236 F.3d 446, 451 (8th Cir. 2001) ("reliance on the advice of counsel or a mistake about the law is not protected by" the *bona fide* error defense) (quoting *Hulshizer v. Global Credit Servs., Inc.*, 728 F.2d 1037, 1038 (8th Cir. 1984)). Nor has the Court been provided with any precedent holding that such reliance is a substitute for adequate procedures under the statute. Accordingly, despite Defendant's intent, lack of enforcement, and reliance on ClubReady, Defendant is not entitled to summary judgment based on a *bona fide* error defense.

### C. Enforcement through § 1693m

Finally, Defendant argues that 15 U.S.C. § 1693l was not intended to be enforced through § 1693m. (Mot. at 9-10.) Plaintiff responds that the statute's construction belies Plaintiff's argument, that the EFTA is remedial and should be broadly construed, and that

Plaintiff's proposed reading would abrogate the purpose of the statute. (Resp. at 14-18.) Neither party's argument is substantiated by any on-point precedent and the vast majority of their arguments provide no citation whatsoever.

Defendant's primary support for its argument is one of construction: that the EFTA's anti-waiver provision does not have a target audience in contrast to other subsections of the statute. (Mot. at 9.) Thus, Defendant argues, Congress did not intend to designate a group of people that can be penalized for violations of § 1693l through § 1693m, but only to invalidate any violative agreements. (Mot. at 10.) Plaintiff, on the other hand, notes that the statute has express carve outs for § 1693h and § 1693f, which cannot be enforced through § 1693m, and argues that Congress would have included § 1693l had it intended to. (Resp. at 16.) The Court agrees with Plaintiff. While the constructive language differs, § 1693l is not included in the carve outs and the anti-waiver provision does not use the term void, voidable, invalid, or any other synonym that would connote a different application than the remainder of the statute. Moreover, the statute is remedial and to be read through the prism of consumer protection. While voiding of such agreements would serve a protective purpose, the statute as a whole supports an interpretation allowing offensive enforcement—a more prescriptive and fulsome remedy.

Defendant also argues that under Plaintiff's proposed interpretation consumers could themselves be penalized if they drafted an agreement that constituted a waiver of their own rights. (Mot. at 10.) Plaintiff responds that few customers are aware of the EFTA, consumers are "never" the party to draft an electronic funds transfer, and violators of the statute are only expressly liable to consumers. (Resp. at 17 (citing 15 U.S.C. § 1693m).) While Plaintiff's argument is an overstatement, and one could imagine several instances where a consumer could draft an agreement, the Court agrees that Defendant's hypothetical does not negate the plain language of the statute or preclude its enforcement.

At bottom, the language of the statute, its purpose and construction all lead to the conclusion that Plaintiff is entitled to statutory damages and enforcement through § 1693m. Moreover, courts within this District have found statutory damages appropriate for violation of the anti-waiver provision alone. *See Jordan*, 2016 WL 5363752 at *4 (granting putative class action's motion for certification based on the anti-waiver provision of the EFTA). Thus, the Court will not grant Defendant's Motion for Summary Judgment based on its statutory argument.

## IV. CONCLUSION

As Plaintiff notes, there is very little case law regarding the anti-waiver provision of the EFTA, with relatively few courts even considering the issue. (Resp. at 6, 19.) Thus, the Court is bound by the language of the statute and Defendant's Member Agreement, regardless of Defendant's business practices in general or in regards to the at-issue transaction, or the Court's recognition of Defendant's intent, lack of enforcement, and reliance on a third-party. In being so bound, the Court finds the Member Agreement's language creates an additional hurdle that Plaintiff must jump in order to exercise her EFTA-granted rights without legal exposure, thereby impinging on those rights in violation of the anti-waiver provision. Defendant has not adequately illustrated a *bona fide* error defense. Accordingly, the Court will deny Defendant's Motion for Summary Judgment (Doc. 32), the only motion before it.

**IT IS THEREFORE ORDERED** denying Defendant M & M Fitness LLC d/b/a Knockout Fitness's Motion for Summary Judgment (Doc. 32).

Dated this 10th day of April, 2017.

Honorable John J. Tuchi
United States District Judge